UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CAPITAL ONE, N.A. d/b/a CAPITAL ONE AUTO FINANCE, <br><br> Plaintiff, <br><br> v. <br><br> CROWN MOTORS, INC. d/b/a VOILA AUTO SALES, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:18-cv-776 (AJT/TCB) |

## **REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. 22). After representatives for Defendant failed to respond to Plaintiff's motion or to appear at the hearing on March 29, 2019, the matter was taken under advisement.[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED.

### I. INTRODUCTION

#### A. Background

On June 22, 2018, Capital One, N.A. d/b/a Capital One Auto Finance ("Plaintiff") filed this lawsuit against Crown Motors, Inc. ("Defendant"), alleging that Defendant breached the Dealer Agreement that it entered into with Plaintiff. Plaintiff now seeks an entry of default judgment that

---

1. Relevant filings before the Court include Plaintiff's Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Default Judgment (Dkt. 22) ("Mot. Default J."); Plaintiff's Memorandum in Support of Motion for Default Judgment (Dkt. 23) ("Mem. Supp."); Declaration of Joseph Allison in support of Capital One, N.A.'s Motion for Default Judgment (Dkt. 23-1) ("Allison Decl."); Declaration of Phillip C. Chang in Support of Motion for Default Judgment (Dkt. 23-3) ("Chang Decl."); Supplemental Declaration of Phillip C. Chang for Costs and Fees (Dkt. 27) ("Suppl. Chang Decl."); and all attachments and exhibits submitted with those filings.

awards it monetary damages and attorneys' fees and costs. (Mot. Default J., Ex. 1; Mem. Supp. at 14.)

## B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject-matter jurisdiction and personal jurisdiction over the defaulting parties, and venue must be proper.

The Court has subject-matter jurisdiction over this action. A court shall have subject-matter jurisdiction when an action involves a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000.00. *See* 28 U.S.C. § 1332(a). In this case, Plaintiff is a national bank with its main office, as set forth in its Articles of Association, located at 1680 Capital One Drive, McLean, Virginia and therefore is a citizen of Virginia.[2] (Compl. ¶ 6.) Defendant is a Florida corporation with its principal place of business located at 3400 South Orange Blossom Trail, Orlando, Florida. (*Id.* ¶ 7.) With regards to the amount in controversy, the amount sought by Plaintiff exceeds $75,000.00. (*Id.* ¶ 11, Prayer for Relief ¶ 2.) Accordingly, with Plaintiff and Defendant being citizens of different states and Plaintiff seeking more than $75,000.00, the Court has subject-matter jurisdiction over this action.

The Court has personal jurisdiction over Defendants in this action. For personal jurisdiction over a defendant, the standards of both federal due process and the forum state's long-arm statute and must be satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not

---

2. *See* 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."); *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) ("Reading § 1348 in this context, one would sensibly 'locate' a national bank for the very same purpose, *i.e.*, qualification for diversity jurisdiction, in the State designated in its articles of association as its main office.").

2

offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Virginia's long-arm statute, Virginia Code § 8.01-328.1, "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). With federal due process and Virginia's long-arm statute requiring the same standards, essentially only one personal jurisdiction inquiry is required. *See id.* The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib.*, 682 F.3d at 301 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). As stated in the Complaint, Defendant regularly conducted business in the Commonwealth of Virginia by entering into a dealer agreement with Plaintiff, a Virginia-based national bank, and transferring dozens of financial instruments to Plaintiff. (Compl. ¶¶ 1, 9, 13-14.) Moreover, by breaching the dealer agreement, Defendant caused injury in Virginia to Plaintiff. Therefore, Defendant has maintained sufficient contact with Virginia based on conduct connected to this case to allow the Court to have personal jurisdiction over Defendant.

Venue in this action is proper in this Court. Venue in a court is proper when the action is brought in a judicial district in which a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). In this case, venue in this Court is proper because a substantial part of the events giving rise to the claims in this case, specifically, Defendant's acts and omissions related to the dealer agreement, resulted in harm to Plaintiff in this Court's judicial district. (Compl. ¶¶ 12, 20-47.)

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that all defaulting parties

3

have been properly served. As a general rule, a defendant must be served with the summons and complaint filed with a federal court. *See* Fed. R. Civ. P. 4. However, various avenues exist to serve a defendant.

Federal Rule of Civil Procedure 4(h) provides that a corporation may be served in a judicial district of the United States by delivering a copy of the summons and a copy of the complaint to any agent of a defendant authorized to receive service of process. Fed. R. Civ. P. 4(h). On October 23, 2018, Plaintiff's process server served Stephen D. Milbrath, who was authorized to accept service on behalf of Defendant as Defendant's registered agent, with copies of the summons and complaint at 180 North Park Avenue, Suite 2A, Winter Park, Florida 32789. (Dkt. 12; Mem. Supp., Ex. D.) Therefore, service was proper in this case.

### D. Grounds for Default Judgment

The entry of default judgment may be appropriate when a defendant has failed to appear in a case. *See* Fed. R. Civ. P. 55. To date, Defendant has not appropriately appeared or otherwise participated in these proceedings. On December 12, 2018, Plaintiff filed its Request for Entry of Default (Dkt. 14), seeking a Clerk's entry of default for Defendant. On December 14, 2018, the Clerk of the Court issued the Entry of Default (Dkt. 15) for Defendant. On March 8, 2019, Plaintiff filed its Motion for Default Judgment. The Court then held a hearing on Plaintiff's Motion for Default Judgment on March 29, 2019, at which no representative for Defendant appeared. Finding the matter uncontested, the Court took the matter under advisement for the undersigned to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiff has established the following facts.

4

Plaintiff is a national banking association located in the Commonwealth of Virginia. (Compl. ¶ 6; Allison Decl. ¶ 5.) As part of its auto finance business, Plaintiff enters into dealer agreements through which dealerships agree to sell, and Plaintiff agrees to purchase, chattel paper ("Receivables"). (Allison Decl. ¶ 7.) Receivables, as defined in the dealer agreements, includes "promissory notes, contracts, security agreements, guaranties, chattel documents, financing instruments and other documents acquired by the dealer as part of the financing of the purchase of the new and/or used motor vehicles." (Compl. ¶ 13; Allison Decl. ¶ 8; Mem. Supp., Ex. B at 1.) Before purchasing a receivable, a dealership must first submit an initial application to Plaintiff, providing information regarding the sale of a vehicle as well as a credit application. (Allison Decl. ¶¶ 10-11.) If Plaintiff conditionally agrees to extend credit, a dealership submits additional documents to Plaintiff to support the conditional approval of funding ("Funding Package"). (*Id.* ¶ 12.) Plaintiff pays a dealership a commission for each Receivable it ultimately purchases. (*Id.* ¶ 13.)

Defendant is an automobile dealership incorporated under the laws of the State of Florida. (Compl. ¶ 7.) On July 4, 2015, Defendant entered into a dealer agreement ("Dealer Agreement") with Plaintiff. (*Id.* ¶ 13; Allison Decl. ¶¶ 14-15; Mem. Supp., Ex. B.) As with other dealer agreements, the agreement between Defendant and Plaintiff provided that Defendant agreed to sell, and Plaintiff agreed to buy, Receivables. (Compl. ¶ 13.) Plaintiff purchased each of the Receivables at issue in this case and all those Receivables are subject to the Dealer Agreement. (Compl. ¶¶ 22-46; Allison Decl. ¶¶ 16-17.) Defendant made several representations and warranties regarding the Receivables it sold to Plaintiff. (Compl. ¶ 17; Allison Decl. ¶¶ 18-19.) Those representations and warranties induced Plaintiff to purchase the Receivables. (Compl. ¶¶ 56, 64, 70, 84, 93; Allison Decl. ¶ 18.) Per paragraph 1(c) of the Dealer Agreement, Defendant represented

5

and warranted that it "has properly filed of record the Debtor's obligation and grant of security interest within 20 days of the sale date in the subject motor vehicle [and Defendant] has properly perfected said security interest according to applicable law . . . ." (Compl. ¶ 17(a); Allison Decl. ¶ 19(a); Mem. Supp., Ex. B ¶ 1(c).) Per paragraph 1(d) of the Dealer Agreement, Defendant represented and warranted it "has obtained a certificate of title for the subject motor vehicle reflecting [Plaintiff] as the primary lien holder." (Compl. ¶ 17(b); Allison Decl. ¶ 19(b); Mem. Supp., Ex. B ¶ 1(d).) Defendant agreed, pursuant to paragraph 3 of the Dealer Agreement, to repurchase, upon Plaintiff's demand, any Receivable "for which there has been a breach of one or more of the [Defendant's] representations and warranties as set forth in Paragraph 1" for a price that "shall be equal to the total outstanding indebtedness currently due under the terms of said Receivable." (Compl. ¶ 18; Allison Decl. ¶ 20; Mem. Supp., Ex. B ¶ 3.)

Initially, Plaintiff identified six Receivables for which Defendant failed to perfect Plaintiff's security interest and failed to obtain a certificate of title showing Plaintiff as the primary lien holder. (Compl. ¶¶ 23-28, 71-75; Allison Decl. ¶ 21.) Plaintiff demanded Defendant repurchase those Receivables but Defendant refused. (Compl. ¶¶ 47, 91; Allison Decl. ¶ 22.) As of March 8, 2019, only one of those six Receivables has an outstanding balance with a still unperfected title. (Allison Decl. ¶ 23; Compl. ¶ 25.) The remaining outstanding balance on that Receivable is $15,396.15. (Allison Decl. ¶ 24.)

Furthermore, the Dealer Agreement also provided that if "any Receivable is prepaid or repurchased by [Defendant] prior to maturity, [Plaintiff] may rebate charges in accordance with the schedules that may then be in effect regarding such rebates." (Compl. ¶¶ 19, 98; Allison Decl. ¶ 25; Mem. Supp., Ex. B ¶ 6.) Therefore, if a borrower, for example, purchased and financed an optional warranty, service, or other contract when purchasing the vehicle, the borrower would be

6

entitled to a pro-rata refund of the contract price if the Receivable terminated prematurely. (Allison Decl. ¶ 26.) When that happens, Plaintiff credits the pro-rata refund to the borrower's account and then invoices the dealership for a reimbursement. (Compl. ¶ 101; Allison Decl. ¶ 27.)

Initially, Plaintiff identified sixteen (16) Receivables that were prepaid prior to maturity due to repossession or other reasons. (Compl. ¶ 99; Allison Decl. ¶ 28.) As of March 8, 2019, Defendant still owes Plaintiff reimbursements for pro-rata refunds of fifteen (15) of those Receivables. (Allison Decl. ¶ 29; Compl. ¶¶ 29-30, 32-44.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Although a defaulting party "'admits the plaintiff's well-pleaded allegations of fact' as to liability, the party in default is 'not held . . . to admit conclusions of law' or allegations regarding liability that are not 'well-pleaded.'" *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (quoting *Ryan*, 253 F.3d at 780)). Consequently, before entering default judgment the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff alleges seven separate counts. Plaintiff asserts claims against Defendant alleging (1) one count of fraudulent misrepresentation, (2) one count of negligent misrepresentation, (3) two counts of breach of representation, warranty, and covenant, and (4) three counts of breach of contract. (Compl. ¶¶ 49-104.) However, Plaintiff only seeks default judgment on three counts: one

count of breach of representation, warranty, and covenant and two counts of breach of contract. (Mem. Supp. at 1.) Therefore, the undersigned will only consider the counts Plaintiff seeks default judgment for.

### A. Receivables with Unperfected Titles (Counts IV and VI)

Plaintiff alleges Defendant breached the Dealer Agreement by failing to comply with its representations and warranties that it would perfect title in Receivables sold to Plaintiff. (Mem. Supp. at 10-12.) Under Virginia law, the elements of a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."[3] *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

Plaintiff sufficiently alleges breach of contract claim. First, the Complaint alleges that Plaintiff and Defendant entered into the Dealer Agreement, a binding contract, on July 4, 2015. (Compl. ¶ 13; Allison Decl. ¶ 14.) As part of the Dealer Agreement, Defendant represented and warranted that it would properly perfect the security interest and obtain a certificate of title reflecting Plaintiff as primary lien holder. (Compl. ¶ 17.) Second, the Complaint alleges Defendant breached the Dealer Agreement by failing to perfect Plaintiff's security interest. (Compl. ¶¶ 21, 25; Allison Decl. ¶¶ 21-23.) The Complaint further alleges Defendant breached the Dealer Agreement by failing to repurchase the Receivable upon its initial breach of the representations and warranties. (Compl. ¶¶ 47, 91; Allison Decl. ¶ 22.) Third, the Complaint alleges Defendant's breach damaged Plaintiff. (Compl. ¶¶ 75, 93; Allison Decl. ¶¶ 21-23.) Defendant's breach denied Plaintiff the benefit of the bargain and caused Plaintiff to lack a security interest in the vehicle

---

3. Under Virginia law, a claim for breach of representations, warranties, and covenants in a contract is a breach of contract claim. *See MCR Federal, LLC v. JB&A, Inc.*, 808 S.E.2d 186, 195 (Va. 2017).

8

serving as collateral for the Receivable. (Compl. ¶¶ 74-75, 93-95.) Therefore, default judgment against Defendant for breach of contract is appropriate.

### B. Pro-rata Rebates (Count VII)

Plaintiff also alleges Defendant breached the Dealer Agreement by failing to reimburse Plaintiff for pro-rata reimbursements it made. (Mem. Supp. at 12.) The elements for breach of contract under Virginia law also apply in this instance. *See Squire*, 758 S.E.2d at 60. First, Plaintiff alleges a binding contract with Defendant. The Dealer Agreement required Defendant to pay Plaintiff for pro-rata reimbursements it made when a Receivable was prepaid prior to maturity. (Compl. ¶ 19; Allison Decl. ¶¶ 25-27; Mem. Supp., Ex. B ¶ 6.) Second, Defendant breached the agreement by failing to pay Plaintiff for the pro-rata refunds it made on fifteen (15) Receivables. (Compl. ¶¶ 101, 103; Allison Decl. ¶ 29.) Third, Defendant's breached damaged Plaintiff as it has not yet received the reimbursements it is entitled to under the Dealer Agreement. (Compl. ¶ 104; Allison Decl. ¶¶ 29-30.) Therefore, Default Judgment against Defendant on this breach of contract claim is also appropriate.

### IV. REQUESTED RELIEF

Plaintiff seeks monetary damages and attorney's fees and costs. In assessing damages, "a district court entering a default judgment may award damages ascertainable from the pleadings." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998). Therefore, the Court considers each type of Plaintiff's requested relief in turn.

### A. Monetary Damages

In terms of monetary damages, Plaintiff seeks an award of $13,007.48 and order compelling Defendant to repurchase the Receivable identified in paragraph 25 of the Complaint, a value of $15,396.15. (Mem. Supp. at 13; Allison Decl. ¶ 24.) Based on an affidavit from Joseph

Allison, the undersigned finds it appropriate to award Plaintiff $13,007.48 for the pro rata reimbursements it is owed under the contract. However, Plaintiff's request for an order compelling Defendant to repurchase the Receivable requires further analysis.

Plaintiff is entitled to be put in as good as position as it would have been had the contract been performed. *See, e.g., Nichols Const. Corp. v. Va. Machine Tool Co.*, 661 S.E.2d 467, 471 (Va. 2008). Thus, it follows, a plaintiff is only entitled to the actual loss sustained. *Dominion Resources, Inc. v. Alstom Power, Inc.*, __S.E.2d__, 2019 WL 1561485, at *4 (Va. 2019). Accordingly, a plaintiff is not "allowed to be put in a better position than he would have been had the wrong not been done and the contract not been broken." *Orebaugh v. Antonious*, 58 S.E.2d 873, 875 (Va. 1950). Typically, monetary damages, not equitable relief, will make a plaintiff whole in a contract setting. *Nichols*, 661 S.E.2d at 471 ("[T]he proper measure of unliquidated damages for breach of a contract 'is the sum that would put [the plaintiff] in the same position, as far as money can do it, as if the contract had been performed.'" (quoting *Estate of Taylor v. Flair Property Assocs.*, 448 S.E.2d 413, 414 (Va. 1994))). However, in some circumstances, a plaintiff may obtain relief in the form of specific performance rather than monetary damages.

"Specific performance is an equitable remedy, which may be considered by the trial court where the remedy at law is inadequate and the nature of the contract is such that specific enforcement of it will not result in great practical difficulties." *Chattin v. Chattin*, 427 S.E. 2d 347, 350 (Va. 1993) (citing *Thompson v. Commonwealth*, 89 S.E.2d 64, 67 (Va. 1955)). Before awarding specific performance, a court must ensure that monetary damages are either unavailable or inadequate. *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1088 (E.D. Va. 2011). Equitable principles and the facts of a particular case will determine whether a court will grant specific performance. *Id.* (citing *Cangiano v. LSH Building Co.*, 623 S.E.2d 889, 894 (Va.

10

2006)).

Here, Plaintiff seeks a court order directing Defendant to comply with paragraph 3 of the Dealer Agreement. Therefore, it appears that Plaintiff seeks specific performance of the contract. Before granting specific performance, the undersigned must ensure monetary damages are unavailable or inadequate.

Although Defendant's breach harmed Plaintiff in several respects, it is not readily clear if that harm caused explicit, sizeable, or an easily quantifiable amount of monetary damages. First, Defendant's breach harmed Plaintiff because Plaintiff now lacks a security interest in the collateral for the Receivable at issue. Second, Defendant's failure to repurchase the Receivable forces Plaintiff to continually be exposed to the risk it attempted to contract away. *See Resolution Trust Corp. v. Key Fin. Servs., Inc.*, 280 F.3d 12, 18 (1st Cir. 2002) ("A repurchase provision is designed to shift the risk to the selling party in the event that a dispute arises."). As a result, the undersigned is inclined to find that specific performance is the more equitable remedy. Additionally, in a relatively similar case involving the application of a repurchase provision, the Virginia Supreme Court affirmed the trial court's award of specific performance. *AME Fin. Corp. v. Kiritsis*, 707 S.E.2d 820, 823, 825 (Va. 2011). There, the trial court granted a defendant's cross-claim against its co-defendant after finding that the co-defendant breached the contract by conveying a note with a deficiency and then, upon the breach, refusing to honor the contract's repurchase provision. *Id.* at 823. The trial court ultimately held that specific performance was appropriate and ordered the co-defendant to repurchase the note with interest. *Id.*

Given the Virginia Supreme Court's decision in *Kiritsis*, it would seem appropriate for the Court to award specific performance in this case. However, because Defendant is in default, the undersigned maintains concerns regarding the effectiveness of ordering specific performance.

11

Defendant's refusal to otherwise participate in this lawsuit causes the undersigned to lack faith in Defendant's ability or willingness to repurchase the Receivable. When a defendant displays an "absolute inability . . . to perform his undertaking at all, when called upon the court so to do," a court will decline to grant a request for specific performance. *Jones v. Tunis*, 37 S.E. 841, 841 (Va. 1901). Instead, when a "contract is clearly proven, and the only objection to a decree for performance is the inability of the defendant to comply, a court of equity will usually ascertain and decree the damages to which the plaintiff is entitled by reason of the defendant's breach" as it will "do complete justice" and "prevent a multiplicity of suits." *Id.*

Moreover, the undersigned is less concerned with a potential windfall for Plaintiff due to the Virginia Supreme Court's recent decision to apply the collateral source rule to contracts. *See Dominion Resources*, 2019 WL 1561485, at *6. "The collateral source rule is a narrow exception to both the default rule against double recoveries and the principle that compensatory damages cannot leave a plaintiff better off than before the injury." *Id.* at *4. In tort cases, the collateral source rule applies to insurance payments as well as "social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous." *Id.* at *3 (quoting *Bullard v. Alfonso*, 595 S.E.2d 284, 287 (Va. 2004)). As the Virginia Supreme Court has explained repeatedly, "the collateral source rule implements a public policy allocating the double recovery to the plaintiff." *Id.* at *4 ("A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer." (quoting *Acuar v. Letourneau*, 531 S.E.2d 316, 323 (Va. 2000))). In a comparable case, the First Circuit rejected the defendant's

12

argument that an award of general damages in a breach of contract case would provide plaintiff with a windfall. *Resolution Trust*, 280 F.3d at 18. In that case, the defendant breached the contract, in part, by selling loans to the plaintiff with title deficiencies, which was a material breach of the representations and warranties. *Id.* at 17. Under the contract, repurchase of the loans was the sole remedy. *Id.* at 18. However, the First Circuit found that, due to the defendant's failure to honor the pre-negotiated remedy provision, an award of general damages was appropriate in order to make plaintiff whole. *Id.*; *see also id.* ("More than arguably, [Defendant] appears to be the party that is trying to take advantage of whatever "windfall" will result from the fact that the vast majority of the disputed loans have gone off-line.").

Here, the fact that Plaintiff might continue to receive payments on the Receivable should not frustrate Plaintiff's ability to, as quickly as possible, remove the risk from its books and obtain the benefit of its bargain. Defendant, despite a court order, could refuse to repurchase the Receivable; thereby increasing the harm to Plaintiff by prolonging its risk exposure and requiring Plaintiff to again come into Court. Additionally, should the Receivable default, Plaintiff would be forced to come back into the Court to attempt to recover damages from Defendant. This is unfair.

Therefore, the undersigned recommends the Court award Plaintiff monetary damages for the total outstanding amount of indebtedness of the Receivable rather than specific performance. But, with the caveat that Plaintiff should, if feasible, assign or transfer the Receivable to Defendant upon satisfaction of its judgment (i.e. after being made whole). If Plaintiff is unable to effectuate a transfer of the Receivable to Defendant, the Plaintiff should instruct the borrower to cease making payments on the Receivable after it collects the full amount of the judgment, including fees and costs.

## B. Attorneys' Fees and Costs

Plaintiff seeks recovery of $19,849.50 in attorneys' fees and costs. (Suppl. Chang Decl. ¶ 8.) The amount sought is based on $18,965.50 in total attorney's fees, which comprised of work completed by the following professionals:

| Timekeeper | Role | 2018 Hourly Rate | 2019 Hourly Rate |
|---|---|---|---|
| Phillip Chang | Partner (12th Year) | $515 | $530 |
| Anthony McGavran | Associate (9th Year) | $425 | $440 |
| James McNichol | Associate (6th Year) | $350 | N/A |
| Benjamin Sitter | Associate (9th Year) | $425 | N/A |
| James Holt | Associate (10th Year) | N/A | $440 |
| Sarah Rashid | Associate (3rd Year) | N/A | $315 |
| Bonnie Powell | Senior Paralegal | $175 | N/A |
| Nicholas Treviso | Paralegal | $175 | $185 |
| John Mirabell | Case Assistant | N/A | $75 |
| Cynthia Smith | Librarian | $175 | N/A |

(*Id.* ¶ 12.) The amount sought also includes $884.00 in costs. (*Id.* ¶ 8.) In support of its request, Plaintiff submitted an itemized list of the legal services performed, which details the work done, hours expended, and total amount due, as well as an itemized list of costs. (*Id.*, Ex. A.)

Plaintiff is entitled to recover its attorneys' fees and costs. Parties may contract away the 'American rule' for attorneys' fees and instead "adopt[] provisions shifting fees to the losing party in disputes involving the contract." *Dewberry & Davis, Inc. v. C3NS, Inc.* 723 S.E.2d 239, 243 (Va. 2012). Under the Dealer Agreement, Defendant agreed to "defend, indemnify, and hold harmless [Plaintiff], from and against any and all costs, expenses, losses, damages, claims and liabilities arising out of or resulting from . . . any breach of any of [Defendant's] representations, warranties and covenants . . . . [including] attorney's fees, court costs of investigation and related costs." (Allison Decl. ¶ 31; Mem. Supp., Ex. B ¶ 4.) The undersigned has reviewed the requested attorneys' fees and costs and finds that they are reasonable compensation for the time expended to enforce Plaintiff's rights. Therefore, Plaintiff should be awarded their requested attorneys' fees

and costs.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends default judgment against Defendant. Specifically, the undersigned U.S. Magistrate Judge recommends Plaintiff be awarded $48,253.13, consisting of $28,403.63 in monetary damages and $19,849.50 in attorneys' fees and costs. Additionally, the undersigned recommends that the Court's order instruct Plaintiff to attempt to transfer or assign the Receivable identified in paragraph 25 of the Complaint upon satisfaction of the judgment and, that if transfer is not possible, to inform the borrower to cease making payments on the Receivable.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send copies of this Report and Recommendation to Defendant at the following addresses of record:

Stephen D. Milbrath
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789

Crown Motors, Inc. d/b/a Voila Auto Sales
3400 South Orange Blossom Trail
Orlando, Florida 32839

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

April 26, 2019
Alexandria, Virginia